IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2020

**STATE OF TENNESSEE v. SHANNON DANIELS**

**Appeal from the Criminal Court for Campbell County**
**No. 14880[1]   E. Shayne Sexton, Judge**

_____

**No. E2019-01602-CCA-R3-CD**

_____

The Appellant, Shannon Daniels, appeals the Campbell County Criminal Court's revocation of her probation and ordering that she serve the balance of her effective ten-year sentence in confinement. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Corbin H. Payne, Knoxville, Tennessee, for the appellant, Shannon Daniels.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jared Ralph Effler, District Attorney General; and Lindsey Cadle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On November 14, 2011, the Appellant pled guilty as a Range I, standard offender to two counts of aggravated assault, a Class C felony; one count of reckless endangerment, a Class E felony; one count of theft under $500, a Class A misdemeanor; one count of aggravated assault against a public employee, a Class A misdemeanor; and one count of resisting arrest, a Class B misdemeanor. After a sentencing hearing, the trial court imposed an effective ten-year sentence to be served as six-months in jail followed by supervised probation.

_____

[1] We note that the trial court case number on the Appellant's notice of appeal was incorrect, however, the error has been corrected.

On November 7, 2013, the Appellant's probation officer filed a probation violation report, alleging that the Appellant violated her probation by failing to report to her probation officer during September 2013, by failing to attend a meeting with the Administrative Case Review Committee on October 24, 2013, and by failing to make payments on court costs and restitution. A probation violation warrant was issued. On January 13, 2014, the trial court found that the Appellant violated her probation and ordered that she serve 120 days in jail and the balance of her sentence on "TDOC-FS."

On April 23, 2014, the Appellant's probation officer filed a second probation violation report, alleging that the Appellant violated her probation by failing to make payments on court costs and restitution and by making verbal threats to a neighbor after the Appellant's pit bull got loose on the neighbor's property. A probation violation warrant was issued. On May 5, 2014, the trial court found that the Appellant violated her probation, credited her with time served in jail, and ordered that she continue to serve the balance of her sentence on TDOC-FS.

On June 3, 2016, the Appellant's probation officer filed a third probation violation report, alleging that the Appellant violated her probation by failing to provide proof of attendance to mandated anger management therapy; by missing her appointment with TDOC FSW; by testing positive for THC, Suboxone, BUP, and Oxycodone; by failing to pay supervision fees; by failing to provide proof of completing community service; and by failing to pay restitution. A probation violation warrant was issued.

On July 20, 2016, an amended probation warrant was issued, alleging that the Appellant also violated her probation by attempting to falsify a drug screen and by using a "drug screen defeat device" on January 26, 2016. On October 24, 2016, the trial court ordered that the Appellant complete an alcohol and drug assessment. On October 28, 2016, the trial court filed an order, finding that the Appellant had violated her probation and noting that the assessment ordered on October 24 had been completed. The trial court ordered that the Appellant be released from custody, reinstated her probation, and ordered that she be given credit for time served in jail.

On November 1, 2018, the Appellant's probation officer filed a fourth probation violation report, alleging the Appellant violated her probation by failing to submit proof of employment; by failing to inform a probation officer about her change of residence and change of employment; by failing to obtain permission from a probation officer to leave the county of residence or the State of Tennessee; by failing to allow a probation officer "to verify listed residence for a home visit"; by failing "to comply with lawful instructions upon sentencing hearing held on or about 6/26/18 for Strong-R assessment"; by failing to report to the probation office as instructed; by failing to submit to a random drug screen;

by failing to pay courts costs; by failing to pay supervision fees; by failing to obtain an alcohol and drug assessment; and by failing to submit a DNA analysis specimen to the TBI as required by law. A probation violation warranted was issued.

On August 12, 2019, the Appellant appeared in court for a revocation hearing. At the outset of the hearing, the Appellant acknowledged committing most of the violations listed in the probation violation report. She stated, though, that she completed an alcohol and drug assessment "three years ago" and that the assessment should be in her file. The Appellant's probation officer, who was present in the courtroom, advised the trial court that the Appellant was ordered to complete an alcohol and drug assessment in 2012 but that no documentation of the assessment existed. The probation officer also advised the trial court that another assessment was ordered in 2016 but that the Appellant failed to complete it.

Defense counsel informed the trial court that the Appellant completed an assessment while the Appellant was in jail. The trial court responded that it was concerned about the Appellant's absconding from supervision, not her failure to complete the assessment. Defense counsel stated that this was the Appellant's third probation violation and that she absconded in November 2018. At that point, the Appellant's probation officer advised the trial court that the Appellant was last seen in the probation office on May 23, 2018, when he "drug screened her." He also stated that the Appellant was supposed to return on June 26, 2018, for a risk and needs assessment but that she failed to do so and that her first two violations were due to her failure to report. Defense counsel informed the trial court that, according to the Appellant, she was in the hospital during part of June 2018 and that her child was suffering from severe seizures, which contributed to her failure to report.

The trial court noted that the most recent probation violation warrant was not filed until November 2018. The court stated, "I'm not gonna do this again. Simply not gonna do it." Defense counsel argued that the Appellant had a history of mental illness and could do well on probation. Defense counsel then stated, "My client has got a lot going on in her life. I really do think that she could -- she can do well on this." The court responded, "No, she can't, she won't show up." The trial court allowed the Appellant to address the court, and the Appellant said, "I'm begging you, please, have mercy on me." The trial court stated as follows:

> The mercy has been shown twice. This is not about mercy. I can't get you to do anything. You won't show up. So, what more would you have me do? Do you want eight violations, ten violations? No. I am not doing this again. I'm not doing it again. I cannot preach loud and high enough about staying engaged in probation. . . . So I -- I'm not doing again what has not worked time after time after time. At what point does someone say, I'm gonna do

- 3 -

this myself? I'm not playing it anymore. This is a -- this is a very serious program, probation is a serious program, and you don't take it very serious.

The trial court revoked the Appellant's probation and ordered that she serve the balance of her effective sentence in confinement.

## II. Analysis

The Appellant does not deny that she violated her probation but asserts that she was denied due process because the trial court revoked her probation without "giving her the ability to be heard in person and to present her arguments on an appropriate sentence for her probation violation." The Appellant acknowledges that the trial court had the right to conduct an informal hearing by asking questions about the nature of her probation violations but contends that the trial court abused its discretion and violated due process by interrupting defense counsel and herself at the hearing while they presented arguments for mitigation. We conclude that the trial court properly revoked the Appellant's probation and that the trial court did not deny her due process.

Upon finding by a preponderance of the evidence that the Appellant has violated the terms of her probation, a trial court is authorized to order the Appellant to serve the balance of her original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). This court has held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002).

Initially, we note that this is the Appellant's fourth probation violation, not her third. Regardless, defense counsel stated the outset of the latest revocation hearing that "we will be submitting to the [violation of probation]." Accordingly, the trial court properly revoked the Appellant's probation.

As to the Appellant's claim that she was denied due process, the trial court asked the Appellant if she was admitting to the violations listed in the report, and the Appellant

took issue with only one of violations: whether she failed to complete the alcohol and drug assessment. The trial court allowed the Appellant to address the court, and the Appellant asked for "mercy." The trial court stated that mercy already had been shown to the Appellant and that the trial court was "not doing again what has not worked time after time after time." The trial court then asked, "So is there anything else that needs to be put on the record?" Defense counsel requested that the trial court declare the Appellant indigent. Defense counsel did not request to call the Appellant or any other witnesses to the stand and made no further argument. Therefore, we conclude that the trial court did not prohibit defense counsel or the Appellant from arguing mitigation and that the Appellant was not denied due process. To the contrary, we think the trial court has been more than patient with the Appellant. Thus, we conclude that the trial court did not abuse its discretion by revoking her probation and by ordering that she serve the balance of her effective ten-year sentence in confinement.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE